The sole issue before this Court is whether the Court, when considering the equities, erred in reversing the ALJ's Discretionary Award of Reimbursement. The correct standard for review at the District Court level was for abuse of discretion. Under that standard, the District Court can only overturn an award of equitable relief if, after weighing all of the relevant factors, it has a definite and firm conviction that the ALJ committed a clear error of judgment. In this case, we argue that the District Court failed to weigh all of the relevant factors. This led the Court to conclude erroneously that T.A.'s parents did not raise any issue of special education after the 2001 evaluation, and thus that the District had no opportunity to address special education issues within the public school setting. I will address the point. What's wrong with that? What's wrong with that conclusion? I'm sorry. Could you move? But, yes, what is an error about the fact that FAPE was not at issue prior to the private placement? Sure. I'm going to address five separate instances of when T.A.'s parents raised the issue of special education, four of which occurred prior to the time that he left public school and one of which occurred after he left. I will then review how the ALJ and the First, the ALJ found that the 2001 evaluation was flawed because the district failed to evaluate T.A. in all areas of suspected disability as required by the IDEA when it failed to consider the category of other health impaired. The ALJ held that the district that had the district conducted a full evaluation as required, it would have had the necessary information to find him eligible. The evidence that the ALJ relied upon included the fact that the district's member Well, the difficulty with the 2001 evaluation is that T.A.'s mother explicitly agreed with the school district's assessment that he did not have a learning disability and was not eligible at that time for special education services. And perhaps I need to go back to some more basic elements of the IDEA. There's 13 categories for which a child may be found eligible. Learning disabled is one of them. Another category is other health impaired. And typically a child with ADHD will have an evaluation under other health impaired. In fact Let me try to zero in. At some point there had, was there any disputed, contemporaneously disputed IEP? There was never an IEP developed because the district found that he was not eligible for services. I'm sorry. Okay. Was there a dispute about that at the time? At the time I thought the answer was no. No, at the time the parents understood that T.A. did not meet the eligibility requirements as a learning disabled student and were not aware that there were other categories that they did not dispute the finding that he was not learning disabled. The ALJ held, however, that had the district conducted a full evaluation and looked at other health impairment, that indeed they would have had all the information necessary to find him eligible. The evidence that the ALJ relied upon included the fact that the district's meeting notes, when they decided to conduct an evaluation, included the notation maybe ADD, ADHD. The ALJ also relied on the fact that at hearing, both of the district's expert witnesses testified that that notation about ADD, ADHD on the referral form would have caused them to evaluate in the area of other health impairment. The district court erroneously dismisses the ALJ's reasoning by stating in footnote three on page 13 that the adequacy of the 2001 evaluation was not an appropriate subject for the 2003 due process hearing. The court provided no reason for its conclusion other than saying that T.A.'s parents agreed that T.A. did not have a learning disability, seemingly ignoring the district's obligation to evaluate T.A. in all areas of suspected disability. When was there first, when is there evidence that the district first suspected some form of disability? Well, the evidence in this case, as the ALJ found it, was that very early on in elementary school there were notations on the student's report card indicating that he was having a difficult time completing assignments, difficult time sitting in his seat, a difficult time functioning and focusing and following the classroom's instruction. So very early on in his elementary school career the ALJ found that there were some things that should have put the district on notice that there were problems. And then of course there was the parent coming forward in December of 2000 and asking if there's anything that can be done to help her son. And at that point they initiated the 2001 evaluation that was concluded in June of 2001. The second instance following that 2001 evaluation, the second instance of T.A.'s parents raising the issue of special ed occurred in the fall of 2001 when T.A.'s mother spoke with the school psychologist who had performed the evaluation. She asked about assistance and was told that the district could conduct another evaluation but that it would be difficult to find him eligible. The ALJ includes this as a finding of fact, number 37. The district court does not include this fact anywhere in its opinion. The third instance is fairly significant. Again the parent raised the issue of special education and this time she did it in an email in 2001. She sent an email to the district school psychologist, his counselor and his math teacher whose course he had previously failed that previous semester. She specifically stated, Tom has been in the Forest Grove School District since kindergarten and still cannot do the most basic math functions. Surely there must be some method of teaching more appropriate for him. He is intelligent but apparently cannot process information or learn from the teaching methods used so far. This is found in Exhibit B3A, page 3. The ALJ addresses this in finding of fact 29 and once again the district court never mentions this fact in its order. The fourth instance also occurs in that school year, 2001, 2002, when TA's mother spoke with the counselor about TA's difficulty keeping up in class. The ALJ addressed this in finding of fact number 40 and once again the district court never mentions the fact. The fifth instance occurred following TA's removal from public school at which time after securing an attorney, TA's family formally requested an order requiring the district to evaluate TA specifically in the area of other health impaired. The district did conduct that evaluation and once again found TA not eligible. The ALJ found that the district applied overly restrictive language found nowhere in the eligibility criteria to again determine that TA was not eligible. The ALJ held that TA was in fact eligible. Though the district court did not overturn the ALJ's holding that the district's eligibility determination was an error, the district court failed to address how this error should affect the award of reimbursement other than a conclusory statement that the need for special education services was not so obvious that the general exercise of equity would override the statutory requirement for TA tuition reimbursement. On the other hand, taking all of these facts into consideration, the ALJ analyzed the facts and well supported her conclusions that she reached. In two places in her order, on page 38 of her order, she found that the district was well aware of TA's struggles as there was frequent contact between the family and teachers at Forest Grove in which the family discussed TA's difficulties and their attempts to assist TA to keep abreast of the school work. The ALJ also I guess the difficulty is, I mean, there's no question I guess that he was a, he was a problem or was having difficulties in school all along. But when the mother agrees with the district's assessment and there is no request for an IEP, how do we deal with these sort of other difficulties? The child find obligation of the IDEA is upon the district to evaluate all students with a suspected disability. These parents kept coming to the district and asking for assistance. While they didn't know the correct terminology for IEPs, they did in fact Oh, they had the notices. There's no claim here that they didn't know about the process. And then they Is there? No, they didn't receive that. You're correct. They did receive the procedural safeguards notice, a 15-page brochure. And they did go back. After he was found not eligible, mom goes back to the person on that team, the school psychologist, and in fact says, you know, what can we do here? He in fact flunked that math class. He's continuing to have trouble. I'm concerned about him. Is there any further assistance we can get? And they're told no, that if we do another evaluation, he again will be found not eligible. So the parent did come to the district many times asking for assistance. And though she may not have used the terms, I want a special ed evaluation in the area of other health impaired, frankly, it's the school district's responsibility to evaluate students in all areas of suspected disability. This parent had no idea that her son had a condition that would find him eligible under other health impaired. The school district, on the other hand, is aware of what the law is and their obligation to conduct a full evaluation in all areas of suspected disability. DALJ also included in her analysis on page 47 that because of the frequent contacts that were made by TA's family, many of TA's teachers as well as the school counselor and the school psychologist were very aware of TA's difficulties and the efforts that his family made to keep him on track and complete his course requirements. DALJ found that the district's failure to support it in an award of reimbursement. And again, the abuse of discretion would occur when the reviewing court reviews, weighs all of the relevant factors and is left with a definite and firm conviction that the IALJ committed a clear error in judgment. In this case, the district court had conclusory statements as to why he overruled the hearing officer's opinion and left out many significant factors. In this case, there was no abuse of discretion on the part of the IALJ and for that reason, the district court's order should be reversed and the IALJ's order should be reinstated. I would like to reserve the remaining time unless there are questions. You may do that. You have a little more than three minutes left. May it please the court, my name is Andrea Hungerford. I am counsel for Plaintiff Appellee, the Forest Grove School District. The reason that Judge Mossman did not spend extensive time on the facts cited by opposing counsel is because he spent the majority of his opinion addressing a threshold issue. The important threshold issue here is the fact that the parent of a child with a disability who previously received special education and related services under the authority of a public agency may receive tuition reimbursement for unilateral placement in a private school if the parent moves to another school. What evidence do we have that that is intended to cover the entire field of potential claims of this kind? In other words, Congress could have had two thoughts in mind. One is for those students who have received these services, here are some provisions. For everybody else, go forth and do whatever you've always been doing under other provisions or under the common law. Or Congress could have intended what you're arguing for. What clues do we have? I mean, the Supreme Court's four to four tells us we have probably a 50-50 chance of being right, whichever one we pick, but why is yours the correct interpretation? I believe that mine is the correct interpretation for several reasons. First, the language is clear and unambiguous. It speaks to the need for the reason that I've described. Let's assume that it's ambiguous. If Congress intended for there to be two different ways, one way to treat students who had previously been identified and another way to treat students who had not yet been identified, then it's logical that it would lay out both of those ways. Instead, under one title, which just says reimbursement for private school placement, not for students previously identified only or for handicapped students, that one title, this is the only place in the statute that it talks about how to access reimbursement for private services. So if Congress had in mind two different schemes, why would they specify the way that the disabled students are to proceed and not for other students? Also, the very next section, section three, talks about the notice requirement. And the notice requirement says that either ten business days prior to making the placement or at the last day of schooling, you have to give the district notice. Well, your interpretation sets up kind of a perverse incentive for a school district to refuse to give services to a student who ought to be considered disabled. And therefore avoid not only the usual services, but also reimbursement for a private placement. But parents have remedy if they believe that the district is improperly refusing to identify their child or provide services. They can file for a due process hearing and within 45 days get a ruling that the district has not proceeded correctly. If you interpret the language the other way, there's a perverse incentive to parents to never come to the district, as happened in this case. Never come to the district and ask for an evaluation. Never come to the district and ask for services. Give no notice at all. And legislative history tells us that one of the important components in the 97 amendments was to encourage cooperation between the district and the parents. That's the whole point of the notice provision, so that the district knows parents have concerns, parents want something done, you've got ten days, and then they can go off privately. What happens when the parents are not bound by that notice provision, do not give the district an opportunity to respond, is exactly what happens here. Opposing counsel has argued that there were numerous forms of notice given, eventually formal notice, but things including the e-mail saying, please help, my kid is failing. What does that count as? Does that count as notice that the person is asking for help for their child? Well, according to the statute, it doesn't count as notice to the district in terms of that they are seeking, I mean, hundreds of parents every week or month contact school district officials and say, my child is struggling in this class. I need help with this. Could you help us out with that? A parent merely saying, my child has some struggles and needs help, that is not sufficient to bring about a child find obligation. What is sufficient in your view? Well, these parents knew how to ask about these parents. What in your view is the minimum that triggers the child find obligation with a child who has had obvious learning difficulties since probably age 5? What do you think would be sufficient? There is a section of the statute that talks about when a district knew or should have known that a student was disabled. And the circumstances are when a parent requests an I'm forgetting the last one because it changed here in 04, over 97. But overall, what's adequate is when a staff are sufficiently informed not only that the child might be having some academic struggles, but that he might be in need of specially designed instruction. Not only that he might have a disability, but that that disability might be having an adverse effect on his education and that he might require specially designed instruction as a result. If you compare this case to Greenland, as in Greenland, the student there had ADHD, just like this student. As in Greenland, the student had some difficulty concentrating, just like this student allegedly did. In Greenland, the parent said that she had to help the student three to four hours a night on her homework. And that's when she was in elementary school. Same claim from the parents in this case. But the Greenland court found that the district had not violated its child find obligation because they had not had sufficient notice before she left public school that she might qualify. Remember, we're not just talking might need help, but might qualify for special ed. If you look at the facts included in the district court's decision, T.A. was on track to graduate. His grades were not out of line with what his peers were experiencing. His teachers all testified that they thought that he was pretty well on task, that he would come in and do his work, that their experience was that he was a pretty good student, that he testified that despite missing and late assignments, he was able to earn a C in both semesters and quote, was doing better than I would say probably one-third of my students. So on the one hand, you do have the parent bringing some generalized concerns to staff, even though she knew how to ask for an evaluation and was told she could ask for another evaluation. She didn't do that. She did, as is proper, contact teachers on a case-by-case basis when she felt T.A. was struggling. But those, what we're talking four contacts in, you know, over a year's period of time, that when you look at what the teachers saw, that he was getting adequate grades, he had no disciplinary record, he had good attendance, he was on track to graduate. When he failed a class, he retook it and got a passing grade. And his teachers saw nothing about his behavior that would lead them to believe this is a student that needs special education. Absent that information, the mere fact that a parent is saying, I need some help, my student is struggling, in fact, the district did help in a lot of ways. The teachers testified in multiple places of all of the different types of informal assistance they gave T.A. And they felt it was successful because of how he was doing in their classes. So they didn't see a need to make a referral. They testified that they knew the referral process, had used it, but didn't see it was needed here. Counsel, I have a question about your argument on notice. There did come a time when notice of the proper form was given. And the district court, in its analysis, didn't differentiate at all analytically between the pre-notice period and the period after notice. Would you comment on whether that is a proper legal framework on the part of the district court? The reason why I believe it is a proper legal framework is because the language of the notice provision doesn't allow for the lack of notice to be cured. And Greenland also directly addresses this exact same situation in Greenland. And there the court specifically says you can't cure a lack of notice because the whole point of notice is to give the district a chance to respond before the child is removed. And so even if you give notice at some interim point after the child has been removed, he's already gone. Now, opposing counsel will argue, yes, but the fact that the district in the end didn't find him eligible shows you that even if the district had had notice, they would have found him ineligible. That is not true. You must look at eligibility based on the circumstances at the time you're evaluating. Counsel, the district court also used a phrase. I was looking for it and I can't find it. But I think something like that reimbursement is owed in extreme cases or extreme circumstances, a phrase something like that, is that supported either in the statute or the applicable precedents and if so, where? I do not believe that. Well, it's supported in the statute to the degree that the statute provides for exceptions when notice, lack of notice won't bar reimbursement. Illiteracy, if the district failed to give the parent the procedural rights brochure. So to that degree, extreme circumstances is embodied in the statute. It's also in a footnote in Greenland where the First Circuit says there might be some extreme cases and we're not going to address whether there are or not because that doesn't exist here. And if you look at Greenland in our case, the parallels, the factual parallels are really notable. So I think that it's possible that the district court was leaving open the same door that the First Circuit left open. There were two important statutory thresholds that were not met in this case. The first is that the student was not previously receiving special education services at the time that he was unilaterally removed. The second is that the parents did not give the required notice. Now, opposing counsel has pointed out that in Greenland, the notice didn't come for almost a year. And in this case, the notice came three weeks after the child was placed at Mount Batchelor Academy. But in fact, the notice didn't come in T.A.'s case, in our case, until he'd been out of school almost two months because first he went to Catherine Freer for drug issues. Then he went straight to Mount Batchelor. He left for Catherine Freer on or around February 24th. No notice was given to the district until April 18th. And in Greenland, what you'll note is that shortly after the student was removed to her second private placement, they actually did give notice to the district. But they first came to the district and asked for an evaluation and asked for an IEP. And it was only when they were dissatisfied with all of that that they filed for hearing. Here, the parents didn't even do that. They immediately filed for hearing. And I think it's important for the Court to look at the record in terms of all of the factual places where the parents withheld information from the district they could have provided. The student had been seeing a private counselor for several years. The parents never saw fit to tell the district that. They went out and got a private evaluation shortly before they placed him unilaterally, but chose not to. They knew how to go get a private evaluation, and yet they did not even tell the district that they were getting that private evaluation. Although they had been told after the 2001 evaluation that they had the right to ask for another evaluation, they did not do so. They were given the procedural rights handbook, which told them if you are unhappy with a district's decision not to evaluate or a district's decision not to find your child eligible, here are all your legal remedies. They knew that there were remedies available if the district refused another request to evaluate or still found their child ineligible. And yet they took advantage of none of those. Instead, they were working unilaterally. In fact, the district was working with them to come up with a placement at Portland Community College to help the student because the parents in the district had agreed that this would be a more appropriate educational experience for him. The district thought it had answered the parents' concerns. Counsel, Judge Baio, I think he has a question. Counsel, we've only got a very short time left, and I fully expect in rebuttal that we will hear that Greenland is not the only case cited by the circuits and that we should not follow the first circuit, but we should follow the second circuit in Frank G. v. Board of Education of Hyde Park. It would be only fair to let you comment on that case and tell us why the second circuit is wrong in holding as it did, which is directly contrary to your position. Thank you, Your Honor, and I'll try and be very brief since my time is out or running low here. First of all, if you look at the facts in Greenland versus the facts in Hyde Park, we have very different situations. Our situation is much more similar to Greenland. In Hyde Park and Tom F., the students were already identified as disabled. And in Hyde Park, the district conceded that its IEP did not even offer a FAPE. So those are different factual circumstances. Second, I believe that Greenland's legal analysis is more convincing than the second circuit's. It first finds that the language is clear and unambiguous, which I believe it is for the reasons I've stated today. But it next looks at all of the canons of construction and finds that even if it is in favor of the first circuit's interpretation, and I think that their reasoning and their rationale is more persuasive, I believe that the second circuit goes through a very contorted attempt to reach their holding. And their main concern is that it would be an absurd result that if we hold that this language applies as it is in favor of the first circuit, that they would have to come back to the school and would they then have to languish at that school indefinitely while they're waiting to prove that the educational program is inappropriate. But the 10-day notice provision addresses that issue. Because the 10-day notice provision tells us, well, the minimum period that you would have to stay and get services in the public school would be a minimum of 10 days. Now, as a parent, it might not be the case to only stay 10 days. It might be difficult to prove, as the parent bears the burden of proof, that that program is legally inadequate after only 10 days. But certainly given the 10-day notice requirement, there is no requirement that they stay any longer than that. In addition, due process hearings are now mandated to occur within a 10-day notice. And addressed by, I believe it was the 97 amendments, setting that very fast timeline. And as a matter of fact, you can actually ask for an expedited hearing in certain circumstances. Thank you, counsel. You have exceeded your time. I believe you have some rebuttal time remaining. Thank you. I want to go through a couple of things very quickly. And then I want to spend a little bit of time with the 14-12 and the Greenland and the Second Circuit Frank G. analysis. First, there's been some talk about comparing TA to others in the district. The evidence in the record about these other students in the district is that they spoke English as a second language. They had a very high proportion of students who spoke English as a second language and who came from poor families who had to go to school. As the ALJ pointed out in her analysis, none of these descriptors fit TA. Thus, it was an error for the district court to compare these students to TA. Further, there's no evidence in the record as to the amount of time the parents of these other students spent working with the students. Counsel, speaking only for myself, I mean, I hear you on the factual arguments that you're making. But it seems to me the tricky question here is threshold. Can I repeat 14-12? Yeah. I mean, the question is that when fate was not at issue before TA was withdrawn and a private placement made without the school district's consent, how do you get past the statute into equitable reimbursement land? Well, first, again, if the parents had to come before a school district and say, I believe my child is eligible for specially designed instruction under an IEP, should be found eligible as other health impaired due to his ADHD, which... Okay. I hear that argument. Your time is running short. So let's just assume for the moment, play my game with me. Just explain to me why, under Burlington or the statute, when fate is not at issue before the child is withdrawn and put into a private school without the district's consent, you end up with equitable reimbursement. And I think to answer that question, I would have to say that fate was at issue. Though the parents may not have the ideal language to express their dispute over the free appropriate public education and the fact that they felt TA needed that, they didn't... Okay. If fate, do you agree with the proposition that fate must be at issue in order to trigger the equitable reimbursement? Yes. And I believe the parents did put fate at issue by all the contacts they had with the school district that I previously spoke about. Yes, indeed we do. All right. With regard to Frank G., it does a very good statutory analysis. The Second Circuit did a very good statutory analysis, statutory construction analysis of that specific language of 1412 and found that Greenland had reached it by kind of skewing things and adding the word only in a very inappropriate way. The Second Circuit, in fact, agreed that the Greenland case... Well, if you don't use the word only, what does the language mean? When the Second Circuit looked at that language, they found... Well, no, to you. To you, what does it mean? Well, it means to me, as well as the ALJ in this case, that that notice provision doesn't apply. It only applies to kiddos who previously had received special education. Because the word previously would mean that if they hadn't already received special education, that then the general equity principles would apply. And under those general equity principles, the courts have long held that there needs to be some notice to the school district. And, in fact, that notice was given late, by three weeks here. You may sum up. We've asked you some questions, but your time has run out. But you may briefly summarize. Thank you very much. With regard to Greenland, I want to point out that the parent in that case was a special education teacher, very different from the facts in this case, and that the parents did not give notice for a full year. In this case, of course, the parents gave notice within three weeks. They worked cooperatively with the school district continuously, trying to get the services that they believed their son needed. And when they gave up and thought they were not going to be available to this public school district, they went and sought private, and only after that realized that the school district perhaps had erred in its decisions. Thank you. I appreciate the arguments. I appreciate my colleagues from afar. And we will be returning.
judges: Rymer, Graber, Bea